IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| REGINA FRANCO JURADO, | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Case No. SAG-24-2096** |
| v. | * | |
| | * | |
| BOTTOMS UP GENTLEMEN'S CLUB | * | |
| LLC, *et al.*, | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Currently pending is a Motion for Default Judgment filed by Plaintiff Regina Franco Jurado ("Plaintiff") against Defendants Bottoms Up Gentlemen's Club, LLC ("Bottoms Up") and Chez Joey, LLC ("Chez Joey") (collectively "Defendants"). ECF 16. Defendants did not file an opposition, and the deadline to do so has now passed. *See* Loc. R. 105.2.(a) (D. Md. 2025). This Court has reviewed Plaintiff's motion, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons discussed below, Plaintiff has shown Defendants' liability and has established the damages she seeks. Plaintiff's Motion for Default Judgment therefore will be granted.

### I.    BACKGROUND

Given the posture of this case, these facts are derived from Plaintiff's sworn declaration. ECF 16-1. Bottoms Up and Chez Joey operate as "jointly owned and operated gentlemen's clubs" in Baltimore, Maryland. *Id.* ¶ 3. The two clubs acted cooperatively and not in competition. *Id.* ¶ 11. They    shared    a    common    accountant    or    bookkeeper    and    used    similar    administrative    and

bookkeeping tools. *Id.* ¶ 13. Both Defendants, in each year of the relevant period, generated gross sales or revenue exceeding $500,000. *Id.* ¶ 14.

Among their more than fifteen joint employees, Defendants jointly employed Plaintiff to work as a bartender at the clubs between July 19, 2021 and June 27, 2023. *Id.* ¶¶ 4, 5. Defendants' common ownership, managers, and agents oversaw, directed, and controlled the operations of both clubs, supervised, controlled and directed the terms and conditions of Plaintiff's employment, held full authority and control to set or modify Plaintiff's work duties, responsibilities, hours, and compensation, and had full power and authority to hire, fire, and discipline Plaintiff. *Id.* ¶¶ 7–10.

Defendants kept records of the shifts and hours Plaintiff worked as bartender and are in sole custody, possession, and control of those records. *Id.* ¶¶ 15–16. However, Plaintiff "typically and customarily" worked about three seven-hour shifts per week, for a total of approximately twenty-one hours. *Id.* ¶¶ 18–20. She worked those hours in approximately 80% of the weeks during the relevant period. *Id.* ¶ 21. Defendants never paid her any wages or compensation for her hours worked, only allowing her to keep earned tips. *Id.* ¶¶ 22–24. Even then, Defendants "withheld, deducted, and retained 50% of the earned credit card tip wages" Plaintiff received, and required her "to pay or assign significant portions of my earned tip wages I received from Defendants' customers each shift to Defendants' managers, doorman, or other assignees." *Id.* ¶¶ 25–26. Plaintiff conservatively estimates that each shift, Defendants withheld, deducted, retained or required her to assign "at least $100" from her earned tip wages. *Id.* ¶ 27. Defendants never advised Plaintiff about the federal or state "tip credit" provisions, or that she was entitled to keep and retain all earned tip wages. *Id.* ¶¶ 28–30.

Plaintiff calculates that Defendants owe her $45,025.20 in "free and clear" wages owed. *Id.* ¶ 32.

Plaintiff filed the instant action on July 19, 2024, ECF 1, asserting that both Defendants violated the Federal Fair Labor Standards Act ("FLSA"), Maryland Wage and Hour Law ("MWHL") and the Maryland Wage Payment Collection Law ("MWPCL"). ECF 1. Plaintiff properly served Defendants with the summons and Complaint, but Defendants have not responded to the Complaint and have not appeared in this Court. ECF 9, 10. The Clerk entered default against both Defendants and notified the Defendants by mail. ECF 14, 15. Plaintiff filed the instant Motion for Judgment of Default against both Defendants on April 11, 2025, ECF 16.

## II.    STANDARD FOR DEFAULT JUDGMENT

While the Clerk has entered default pursuant to Federal Rule of Civil Procedure 55(a), it is left to the discretion of the Court to determine whether entry of default judgment is appropriate. *See S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). Despite the strong policy that cases be decided on their merits, "default judgment may be appropriate where the adversary process has been halted because of an essentially unresponsive party." *Id.* at 420–22. In reviewing a motion for judgment by default, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). It remains for the Court, however, to determine whether these unchallenged factual allegations constitute a legitimate cause of action. *Id.* at 780–81; *see also* 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2688.1 (3d ed. Supp. 2010) ("Liability is not deemed established simply because of the default …. [T]he court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the Court determines that liability is established, it must then determine the appropriate remedy. *Ryan*, 253 F.3d at 780–81. A court may not accept factual allegations regarding damages as true, but rather must make an independent determination regarding the allegations. *See Credit*

*Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). In so doing, a court may make a determination of damages without a hearing so long as there is an adequate basis in the record for its award. *See Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) ("The court need not make this determination [of damages] through a hearing… the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum."); *see also Trs. of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc.*, Civil No. ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011) (determining that, in a case of default judgment against an employer, "the Court may award damages without a hearing if the record supports the damages requested"); *JTH Tax, Inc. v. Smith*, Civil No. 2:06CV76, 2006 WL 1982762, at *3 (E.D. Va. June 23, 2006) ("If the defendant does not contest the amount pleaded in the complaint and the claim is for a sum that is certain or easily computable, the judgment can be entered for that amount without further hearing.").

In sum, the court must (1) determine whether the unchallenged facts in Plaintiff's Complaint constitute a legitimate cause of action against each Defendant, and, if they do, (2) make an independent determination regarding the appropriate relief.

## III. DISCUSSION

### A. Employment

To establish liability under the FLSA, MWHL, or MWPCL, Plaintiff must show that she was an "employee" of the Defendants, not an independent contractor. *See Paige v. CD#15CL2001, Inc.*, No. PWG-15-3691, 2017 WL 193499, at *2 (D. Md. 2017). "To determine whether a worker is an employee under the FLSA, courts look to the 'economic realities of the relationship between the worker and the putative employer.'" *McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 241 (4th Cir. 2016) (quoting *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006)).

Courts evaluate the totality of the circumstances, including six factors first discussed in *Schultz* The factors are:

(1) The degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

*Schultz*, 466 F.3d at 304–05. The ultimate question is "whether the worker is economically dependent on the business to which he renders service or is, as a matter of economic [reality], in business for himself." *Id.* at 304. Each factor is addressed below.

### 1. Degree of Control

Plaintiff has asserted that Defendants' common ownership and managers "held full authority and control" to set or modify her work duties, work responsibilities, and work hours, and to hire, fire, or discipline her. ECF 16-1 ¶¶ 9–10. That degree of control suggests an employment relationship.

### 2. Opportunity for Profit or Loss

Plaintiff's rate and method of compensation were within the "full authority and control" of Defendants. *Id.* ¶ 9. This also suggests an employment relationship.

### 3. Investment in Equipment or Material

Plaintiff has not specified that she provided any equipment or material to her bartending role.

### 4. Degree of Skill Required

Bartending requires no special degree of skill.

### 5.  Permanence of the Working Relationship

Plaintiff worked for Defendants for almost two years. This reflects a more permanent relationship like that between an employer and employee.

### 6.  Integral Nature of the Services Rendered

Bartenders are integral to the operation of a gentleman's club, weighing in favor of an employment relationship.

*        *        *

After reviewing the six *Schultz* factors—four of which support , it is evident that Plaintiff was Defendants' employee, not an independent contractor.

## B.  Liability

Defendants are liable under the MWPCL, which requires an employer to pay an employee "all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Md. Code Ann., Lab. & Empl. § 3-505. At the end of Plaintiff's employment, she still had not been paid any wages. Because Defendants had been sued previously, by other employees, under these same wage statutes, Plaintiff asserts that Defendants' violations were willful, not the result of any *bona fide* dispute, and not in good faith.

Defendants are also liable under the FLSA and MWHL, which require that all employees be paid a minimum wage. 29 U.S.C. § 206; Md. Code Ann., Lab. & Empl. § 3-413. As Plaintiff attests that she was paid no wages despite working about 21 hours per week, her declaration establishes liability under those two statutes. Plaintiff further attests that she received no notice that she was a tipped employee or that she would be paid pursuant to the tip credit method of compensation, as required by the law. She is therefore owed minimum wages.

6

C.     **Relief**

1.  **Actual Damages**

Plaintiff can only recover damages once, despite the three statutory wage violations she established. *See Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 333 (1980) ("It … goes without saying that the courts can and should preclude double recovery by an individual."). Plaintiff is entitled to recover the wages she should have been paid, plus the tip monies she was deprived of.

In her sworn declaration, Plaintiff avers that she worked an average of 21 hours per week (3 shifts of 7 hours each) for 18.4 weeks during Maryland's minimum wage was $11.75, 41.6 weeks at which the minimum wage was $12.50, and 20 weeks when the minimum wage was $13.25.  ECF 16-2 ¶ 32. Additionally, she lost approximately $100 in tips per shift, or $300 per work week, due to withholdings, deductions, and assignments. *Id.* The total of those amounts in earned and unpaid wage compensation is $45,025.20.

2.  **Enhanced Damages**

The FLSA states that an employer is liable to its employee "in the amount of their unpaid minimum wages … and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The MWPCL, however, allows a higher recovery, stating "if an employer fails to pay an employee … not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs." Md. Code Ann., Lab & Empl. § 3-507.2(a)–(b). A plaintiff cannot recover both FLSA liquidated damages and MWPCL treble damages. *Paige*, 2017 WL 193499, at * 5 (citing *Quiroz v. Wilhelm Commercial Builders*, 2011 WL 5826677, at *3 (D. Md. Nov. 17, 2011)).

The facts here suggest that the higher recovery is warranted. These defendants have faced prior lawsuits in this district for violation of these same statutes, establishing that there is no bona

fide dispute regarding their wage and tip practices. *See Gamble v. Chez Joey, LLC*, Civ. No. 16-cv-1245-SAG; *Kitzinger v. Chez Joey, LLC, et al.*, Civ. No. 17-cv-00061-JMC. This Court will therefore allow recovery of treble damages, plus reasonable counsel fees and costs. Trebling the actual damages results in an award of $135,075.60.

### 3. Fees and Costs

Finally, Plaintiff seeks her reasonable attorney's fees and costs, which the MWHL and MWPCL allow her to recover. *See* Md. Code Ann., Lab. & Empl. § 3-427; *Id.* § 3-507.2(b). This Court employs the lodestar method to calculate reasonable attorney's fees, which involves multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998).

Plaintiff's counsel requests an hourly rate of $425.00 per hour, which this Court deems to be reasonable. ECF 16-2. He devoted a total of 13.3 hours of billable time to the case. *Id.* This Court has reviewed the billing records and also finds those to be reasonable. Finally, Plaintiff has expended litigation costs in the amount of $655.00. This Court will therefore award $6,307.50 in fees and costs as requested.

A separate Order follows, granting default judgment against Defendants Bottoms Up and Chez Joey, jointly and severally, in the total amount of $141,383.10.

Dated: August 4, 2025

                                                        /s/
                                        Stephanie A. Gallagher
                                        United States District Judge